Good morning, and may it please the court. My name is Brad Walters, and I'm an admitted law student under the supervision of Erwin Chemerinsky. I'd like to reserve three minutes for rebuttal today. I'll begin by addressing how the district court misapplied the legal standards governing First Amendment protections in the prison context. My co-counsel, Mr. Onvanter, will then discuss why Mr. Jones's claims are, in fact, properly before the court today. I.e., the settlement issue? Yes, Your Honor. Okay. This case involves a man who was locked in solitary confinement for six months because he wrote a letter calling for the peaceful resolution of disputes and kept that letter in a drawer. The district court determined that Mr. Jones's letter was not protected speech because, first, the letter was legal advice, and, second, an inmate's legal advice is not protected by the First Amendment. Both aspects of the district court's determination misapplied the holding from Shaw v. Murphy. And as a result of this misapplication, the district court never conducted the proper analysis of Mr. Jones's claims under Turner v. Safley. Had the district court conducted proper Turner analysis, it should have found that defendant prison officials violated Mr. Jones's First Amendment rights on two primary grounds. First, that the letter did not pose a risk to institutional security or any other legitimate penological interest, and, second, that even if it did, the punitive measures taken here constitute an exaggerated response under Turner. Do you think a jury should decide that question? I'm sorry, Your Honor? Do you think a jury should decide whether or not it posed a risk of institutional security? No, Your Honor. We actually ask that this court reverse the lower court's holding and remand with an instruction to grant summary judgment in Mr. Jones's favor. And the reason for that — So as a matter of law, federal judges will conclude that it did not constitute a threat to institutional security. We don't care what the warden — Not quite, Your Honor. The reason that we've requested that you remand with an instruction to grant summary judgment in Mr. Jones's favor is because at the summary judgment stage, the state offered no evidence to contradict the evidence put in by Mr. Jones that the letter was written with the intention of calling an end to violence and nondisruptive practices. So — Oh, go ahead. Sorry. So on remand, the issue would simply be the damages? Yes, Your Honor. That is our request. In the alternative, of course, if you find that there are questions of fact about the letter or the circumstances surrounding it, we do ask that you remand for consideration of those facts. And what would be the damages, given the fact that he's already received $11,000 for the due process violation? Your Honor, as my — What would be the additional First Amendment chilling effect damages that would be at issue? Your Honor, yes, that's part of it. As my co-counsel will address momentarily, the due process claims and the First Amendment claims are quite distinct. And if you'll permit, I'll allow my co-counsel to address that. I wasn't talking about the settlement issue. I was talking about the additional damages that would be open to recovery on remand. Is that your co-counsel's bailiwick as well? Yes, Your Honor. All right. Thank you. Thank you. Could you please tell me that when you spelled out the statute a little while ago, you said that one of the issues was whether it was an exaggerated response. Where does that come from and why is that? Assuming that there was authority to discipline this under the First Amendment, wouldn't any other issue be an Eighth Amendment issue or maybe a due process issue? But why would it be a First Amendment issue if it was — the activity was not protected by the First Amendment? Your Honor, the fourth prong of the Turner test, four factors in the Turner test, the fourth prong was whether the existence of alternatives indicates an exaggerated response by the prison officials. So my understanding of that is that that's distinct from considering the actual alleged violation of a right and instead looks at whether — The theory behind that would be that although the First Amendment rights can be compromised in a prison, they can only be compromised to the degree that the peniological interests require it. Is that the theory? I'm sorry. I'm not sure I understand. I'm trying to understand why once one determined that this was not protected, you would look at the degree of the response. I presume the reason would be is that you were determining that it wasn't protected because of the peniological interests would certainly be protected outside the prison, right? Yes, Your Honor. So therefore, I guess what we're trying to say is did they tramp First Amendment rights more than they had to? That's not what I'm discussing in the context of the exaggerated response. What are you discussing? So I would turn the Court's attention, for example, to Thornburg, the Supreme Court's case, which found that no First Amendment right was violated by the prison officials' actions in confiscating a letter but then discussed that the confiscation was, in fact, appropriate. Contrast that with Turner v. Sapley, for example, the primary case here. So does that convert otherwise a First Amendment claim into a due process claim? Is that what you're arguing? No, Your Honor, at least not within the confines of how the Supreme Court discussed the issue in Turner. I guess the analytical problem I'm having with the argument is that if there is no First Amendment protection for the letter and your argument is that seizing it and taking disciplinary action was an exaggerated response, that sounds to me like a due process or a Fifth Amendment due process claim. That's not how the Supreme Court discussed it in the primary case, nor am I aware of any cases that discussed it in that context arising from Turner. Rather, it is a prong of a part of the analysis. So what's the exaggerated response here, or what should they have done? If, in fact, they could do something about this letter, what should they have done? The obvious alternative would be to have simply confiscated the letter. If we look again at Thornburg, the Court upheld simple confiscation as an appropriate response by prison officials. Six months in solitary confinement exceeds the punishment that at least I'm aware of in any of the cases arising from Turner. So it's an Eighth Amendment claim? Again, that's not... ...to write a letter that the warden thinks is inimical to good institutional security and discipline. Again, Your Honor, that's not how I believe the Supreme Court interpreted the exaggerated response analysis in Turner, and that's not what we bring before the Court today. I would like to leave the remainder of the time for my co-counsel. Thank you very much. Thank you. May it please the Court, my name is Nico Anvanter. Jones's case raised two core questions. First, a substantive First Amendment question, whether the punishment imposed was an improper or exaggerated response to protected speech. And second, a procedural question. Okay, but the settlement, the accord and satisfaction dealt with the judgment. There was only one judgment. There is only one judgment ordinarily in a case, a final judgment. And the final judgment was issued, and it said that this is determining termination of the judgment. So what was left? Your Honor, the judgment entered pertained solely to what was before the jury. Well, in that case, there was never a judgment entered in the case at all, and you shouldn't be here because there was nothing to appeal. I'm sorry, I didn't catch that. In that case, then there was never a final judgment entered at all in the case, and you shouldn't be here because the district court, because we don't have appellate jurisdiction. There's only one judgment entered on the doctor of the court, right? Yes. There was a summary judgment entered on the First Amendment claim, and it was an erroneous judgment which we are appealing to. But a summary judgment is only interlocutory, right? In the end, there was a judgment entered called judgment. Correct. Either that is a judgment for the entire case, including the First Amendment, earlier partial summary judgment, which it incorporates, or there isn't one. Your Honor, I would argue that the judgment entered was the jury instructions focused entirely on the 14th Amendment claim. Why does that matter? The judgment entered was an award on that. So if it's only a partial judgment on one claim, why haven't we fallen into the jurisdictional trap that Judge Berzon was just asking you about? I'm not sure. You can't appeal interlocutorily a partial judgment in a case if there's still a claim pending, which I think is what you're arguing. And there's nothing here that would have given finality to a partial final judgment. There's no Rule 54 certification or anything like that. So the question is, if you have an ability to appeal the summary judgment ruling on the First Amendment, it's because there was a final judgment entered as to the whole case. But if there was a final judgment entered as to the whole case, why doesn't it preclude you from going back for a second bite when your client has recovered by that judgment the amount of money of $11,000 plus $23,000 in attorney's fees under the judgment? I think I understand. Yeah. It's Hobson's choice, perhaps, for your client. Certainly. It's a choice. The settlement, Your Honor, the both the discussion of the settlement and the language of the settlement, including the preamble and the terms, discussed the 14th Amendment claim and the awards within the settlement agreement applied directly to the undisputed, liquidated 14th Amendment claim. Okay. And the judgment was in full satisfaction of the judgment entered herein. Yes, Your Honor. And the post and the accord regarding post-judgment motions. The judgment entered only discussed the 14th Amendment claim. And if this is, in fact, if that judgment should have been interpreted to encompass the entire claim, under Coleman, Jones was not aware of this and he should not be, this settlement should not be maintained as a pitfall into which the unwary may fall by some act wholly unintended to express his acquiescence when his lack of experience or lack of knowledge of the law might debar him for a right of action. Therefore, there was no meeting of the minds if this is the case, Your Honors. Well, doesn't he say that there's, it covers all claims arising out of this lawsuit? That seems pretty clear. It, I do not believe it does, Your Honor. Sorry. In full satisfaction of the judgment entered herein. And the judgment entered herein states. Judgment in a civil action. Yes. The judgment entered herein includes solely the $1 nominal damages and the punitive damages on the 14th Amendment. Then what happened to the summary judgment on the First Amendment claim? It's not the subject of judgment? It is not, Your Honor. That is our contention. Then you don't have any right to be here. I would contend that. Are you familiar with the provisions of Rule 54B? Do you know what we're talking about? When we refer to a certification by the district court? I'm not sure I am, Your Honor. Okay. Basically, it allows the district court to grant partial summary judgment on a claim that's essential to the further litigation and that appellate review of that claim would expedite the litigation in the district court so the rest of the case gets put on hold while an appeal is taken from the claim that the district court certified. That didn't happen here. And we have a whole line of Supreme Court authority that tells us that we are without jurisdiction to hear interlocutory appeals except on very narrow circumstances, one of which is a Rule 54B certification. Now, you should not feel too bad because there are, in fact, you should not feel bad because you are in very good company with many people who have taken the bar and had practiced law for many years who do not have a clue about the existence of Rule 54B. Thank you, Your Honors. I will look back at the notes and get back to you. If you don't regard what looks like the final judgment of the case, it's called judgment in a civil action, as the judgment, then there isn't a judgment. So you're sort of caught in both directions. Was your client represented by a lawyer in the conferences that led up to the signing of the accordant satisfaction and the entry of the judgment? He was, Your Honor. In fact, the lawyer got the $23,000 for his work on the due process part of the case. That is correct, Your Honor. For the trial. So to the extent you want us to argue, you're arguing that it would be unfair to your client who perhaps did not have, should not be held to an understanding of the consequences of the judgment that he entered into and the settlement that he agreed to. He was represented by a lawyer who we do hold responsible for those understandings. Is that correct? That is correct, Your Honor. Thank you. Thank you. Judge Tallman, Judge Berzin, Judge Rosenthal, good morning. My name is Clark Leslie. I represent the appellees in this matter with honor. I'm from the Office of the Attorney General, State of Nevada. I'd like to compliment my young opponents. I was taking a trip down memory lane and I was recalling my first appearance and I was struggling so hard to remember my name that when I got up, I tipped over my water. Judge Proctor hugged. He took great pity on me and had the clerk assist me, and I don't remember anything after that. I did that one time when my witness was being decimated on cross-examination and Judge Kuhnauer accused me of doing it to divert the jury's attention. Was he right? I won't answer that. Don't interview everybody about their first pallet argument because we all have stories. Anyway, go ahead. Your caught-in-headlights look on my face obviously was not a ploy on my part. Your Honors, if it is the belief of any member of this panel that we measure and look at First Amendment expressions in our society the same way that we do expressions of opinion in prisons, then you should grant the appeal. You should remand it back. Well, but in this instance, first of all, there seems to be a complete mismatch between the rule that was applied to him and the letter. They seemed to have nothing to do with each other. The rules is about disruption. Sorry. And no matter how you read this letter, it was not about any kind of physical disruption of the person. Moreover, it doesn't appear to have been about legal advice, so the notion that there's no right and legal advice, he was basically trying to pull together other people as a layperson to do a legal thing, but he wasn't doing it as if he had any special expertise on behalf of anybody else, and moreover, it sat in his drawer. Not completely, Your Honor. I would agree with some of the comments. You may disagree with others. It was not just in his drawer, and we know from both his pleadings and admissions later on that it had been disseminated to at least two. It wasn't disseminated. I mean, okay, maybe it was disseminated, but not in the sense of given for the purpose of soliciting the action he was asking. I mean, the sense one gets is that he wrote this letter. He showed it to some people and said, what do you think of my letter? That was about it, and he put it away. I agree. But he also stated, and it's... In other words, he wasn't trying to get anybody to do anything with this letter. Oh, I disagree. The letter itself states that he was trying... No, but I mean, when he showed it to the people, there's no indication that he showed it to people to get them to do what the letter said. He showed it to them to show them his letter because he was thinking of circulating it, but then he didn't. At that time, but it was his ultimate intent to get everyone involved so that they could support his class action. But a year passes, correct? A year. According to him, a year passes. The letter isn't dated. Well, that's the state of the record at this point. Right. How do we then weave into the position that you've outlined, the evidence in the record of the retaliation, the statements that this is the expletive deleted that we told you about, uttered by the officers who entered the cell to search it, the knowledge that he had previously filed grievances or even lawsuits against some of the other members of the correctional staff? The fact that they apparently spent three hours looking for bullets and didn't have it, they didn't find any. They sat there for three hours reading his mail. First of all, because the record does state that these comments were made, and I'm not going to put my credibility at risk here by stating that the correctional officers at Ely State Prison had a great love for Mr. Jones. They did not. But the fact of the matter is the search originally was done for very appropriate reasons. A correctional officer. But if they spent three hours on each prisoner, they would never have gotten the search done. So they must have been in something else at that point. Once they found the letter, they were excessively thorough. I don't know that it was three and a half hours. That's what Mr. Jones says. We will have to accept that for purposes of the letter. The letter had nothing to do with what they were looking for. Excuse me? The letter had nothing to do with the reason they were doing the search for what they were looking for. Well, that's true, Your Honor. But if they had found drugs, they would have taken action. If they found a weapon, they would have taken action. And we wouldn't be here. In this instance, they found a letter that, in the opinion of the prison officials, was in violation of MJ-28. What does MJ-28 say? MJ-28 states that you are, it is a violation, a major violation of the rules to organize, encourage, or participate in a work stoppage or other disruptive demonstrations or practices. When you look at the letter and you read the key portions of it, it talks about rage against the system. It talks about we outnumber them. It talks about working together against them. And then what we're going to do is file a class action? And that he wants to file a class action. We're not going to have a strike. We're not going to have a riot. We're not going to have anything. We're going to file a class action. Well, that's what he says, but let's not forget his testimony as well. When he was asked why the letter only talks about the inmates playing well with one another and talks nothing about the safety of the correctional officers, he responded, and this is at page 24 of our original opening brief and at our excerpts of record at page 266. He states, quote, well, I'm an inmate. I'm expected to say, well, let's kill them all. This was a maximum security prison. He had been on death row for over 20 years. My esteemed colleague states that his intent was pure in nature and heart. It was for a peaceful way to respond to what was going on in the prison. I would beg to differ with that, but I can accept and concede for purposes of this appeal that perhaps his intent was a good one. There is no one in this courtroom, and not my esteemed opponents, not myself, not even your honors, who can state that they know with any degree of certainty how other inmates would have reacted to this letter. That's true, and if he had circulated it, there might have been a problem. Right, and Judge Berzon, to take that one step further, prisons don't have to wait until something bad happens before they take action. These are sociopaths, psychopaths, habitual criminals, serial killers, and... Did they know at the time that they disciplined him that he had been sitting in this drawer for a year? No. They didn't know? He said, excuse me, go ahead. I'm not saying when they took it, but when they did the proceedings, did they know it? No. That came out later. The jury nonetheless awarded $11,000. Yes, they did, and they awarded it, and I was there. They had a lot of testimony, including testimony from another inmate, about how horrible and Dickinsonian the disciplinary segregation cells were. We had videotaped to show there was a desk and a toilet and a bed, and it was the same size as every other cell. The jury was very influenced by the fact that it does segregate. It does remove the inmate from any visitation, very limited correspondence, no TV, no radio, no walking in the yard. Do you have a settlement issue? Excuse me? I'd like to hear what you have to say about the settlement issues. This court has absolutely defined and identified the problem with us even being here. Mr. Jones, who was represented by counsel at the time, agreed to a settlement in the sum of $11,000 plus attorney's fees arising from the award from the jury. But here's the point. We went to trial, and there were two issues, First Amendment and due process. If Mr. Jones and his attorney elected to emphasize the due process. That's not true. Wait, now you're really off, because there was a First Amendment, an adverse First Amendment summary judgment. That was not in the trial. It was not in the trial. And therefore, the question is, was it just forgotten about, or what happened at the time of the settlement? Well, you're right, with one exception that I'll point out in a minute. It wasn't in the trial. But that's not our fault. To emphasize it, they couldn't have brought up the First Amendment in the trial, because it wasn't there. Against the plaintiff in the case. So he couldn't have tried it. Well, First Amendment issue very much could have been brought to trial. There was no reason why they couldn't have. What? Isn't the answer that he went to trial on the due process claim with regard to how he was treated once the letter was found, and inherent in the proof of that trial was evidence of the content of the letter and the warden's response to it. But that's not the same thing as actually litigating a claim for violation of his First Amendment rights for which the jury presumably could have awarded separate or perhaps more damages than what they awarded on the due process. Presumably. And I agree with that. And I apologize for the confusion. Yeah. Everything arose from this letter. And he says, my First Amendment rights were violated when they took this from me, and my due process rights were violated. The trial was not about the First Amendment issue. And if you were agreeing that the judgment that was referred to was the judgment in the trial, then they're right. Although we may have a jurisdictional problem about what the case is doing here. But so that's the question. I mean, was everybody who was dealing with this just forgetting about the summary judgment determination and had no intention of settling that? I didn't, but they chose to focus on the due process. Well, you seem to have forgotten about it now. So it's perfectly possible you forgot about it then. I didn't. And I was one of the attorneys trying the case. They didn't bring it up. But, Your Honor, before you go. Hang on one second. When you say you didn't, when the case was settled and a judgment, a judgment, was entered, and it is titled judgment in a civil case or judgment in a civil action, makes no mention of the causes of action, are you saying that it was the intent of the lawyers who were involved, because you were among them, only to settle the due process claim and not to settle all of the claims arising from the litigation? I wasn't at the settlement meeting that resulted in this matter. Fair enough. However, I can state, and this sounds very self-serving, but of course, it was our intent to put it, globally put an end to this case. But before I forget, there is an indication that Mr. Jones' counsel did remember the First Amendment case. If you look at docket number 240 at page 34, there was a proposed jury instruction that stated there is a First Amendment right to petition the government. So it was on their mind, and they wanted, at that point, they were at least thinking about promoting a First Amendment case. For whatever reason, they didn't. But there was a judgment against them, a partial summary judgment. Right. Right. So, you know, we go with, you know, like district attorneys and police officers, you know, we go where the evidence takes us. They took us down the due process road. When we went to the settlement conference, we knew that there was an existing lawsuit. See, this is what's odd. The original proposal was to execute a release of all claims. Then Mr. Evans says, oh, the case was decided on the merits, so we don't think releases are appropriate. And so they called a satisfaction of judgment. But, in fact, it's true that the First Amendment issue was decided on the merits, and that just seems to have fallen through the cracks in terms of anybody focusing on it. And I would suggest that that is not a burden that we should share or have to pay for. They had their opportunity to take action. They were supposed to do this piecemeal. Do we go through this and then a few years later bring the First Amendment action? Wasn't the intent of the ---- He clearly had the right to appeal the First Amendment determination if he didn't waive it in the settlement, right? Yes. So that's the question. Did he waive it in the settlement? Oh, yes. Did you all pay the money under the judgment? Yes, we did. Every dime. And as I pointed out, once he got his money, he sent it out, and then he filed his notice of appeal on this issue. And what's wrong with that? I didn't understand it. What's wrong with it is that it is suggestive of the fact that he was playing us, that he was ---- he had every intent ---- What's the difference if he sent the money out or kept it in the press? What's the difference in that? Because we can't get it back or put it on a hold. Well, you would have no right to get it back unless this was clearly intended to settle the entire case. Of course. And that's what we're trying to get a handle on. Right. And if we're dealing with a solvent individual or a business, we know that that money will be there when we get our satisfaction or our favorable result on an appeal. And if we agree that, in fact, this was a settlement that ended up with the ruling on the summary judgment motion being merged with the final judgment, and that ends this, then you would have no right to get the money back. But that's $11,000. So I don't understand why you have no right to get that $11,000 back no matter what. If you win, you lose the money. Right. And you're okay with that? You lose the money. So I don't understand why. Because we would be exposed to even more damages down the road if you allow him to retry the First Amendment case. You at least settled the $11,000 part of it. Okay. Thank you very much. Thank you, Your Honor. Thank you, Your Honors. I'd like to quickly just make a couple of points. The First Amendment claim here was distinct from the due process claim, as my co-counsel discussed. I know that. But I'm looking at page 25 of the transcript before the magistrate judge,   And I think that's a good point. I think that's a good point. And then his lawyer jumps in and says, Well, we decided the case on the merits, so a satisfaction of judgment should be fine. And then the court says, All right, there will just be a satisfaction of judgment that Mr. Evans will execute. And that was executed. And the court says that's the last document that's going into the file. The case is going to be closed. And the judgment, Your Honor, in that case only pertained to the due process claim. But it can't. If you're here properly on appeal, and your position is it didn't dispose of all the claims in the case, there was still a First Amendment claim that was outstanding. Then no judgment was ever entered. Then no judgment was ever entered on. And if no judgment was ever entered on the First Amendment claim, is that what you're saying, Your Honor? Then we would ask you to remand so that that claim can be considered. For lack of jurisdiction is what we would have to do on the basis of the accord and satisfaction of the judgment. And that's the end of it. Whether you can do something in the district court. Unless we find that the settlement, in fact, was the settlement of the entire case. That released all. Yeah, that covered all the claims and that it merged. And if you, Your Honor, you find that it's not a settlement of all the claims, that's when you believe. Sorry, Your Honor. Given the fact that ordinarily something called judgment in a civil case is a judgment for the whole case, what evidence do you have here, specific indications, that that was not what was intended? The transcript from the actual settlement conference. Such as what? In which the attorney for Mr. Jones at the time stated this is only a satisfaction of the judgment that was entered in this court. And that judgment. Where is that? We haven't entered judgment in the court yet, no. At the time of the settlement conference? Well, it had been entered. But what was entered was that judgment. The one that called judgment in a civil action. That's right. And if you look to, for example, the jury instructions that were provided to the jury during that trial and all of that. Well, that trial was certainly only about the due process issue. But that isn't the question. Ordinarily, there is a set of case law that says that any summary judgment determination merges into the final judgment. Okay? So ordinarily, that would be what you would think. So if there's some reason not to think it, what is it? I would just turn the court. And, again, I don't have the settlement conference transcript in front of me. But I believe that the settlement conference transcripts indicates that there was not a meeting of the minds on the issue of whether all previous claims had been settled. If that was the case, then why did Mr. Evans stipulate to the withdrawal of all post-trial motions? And then the last thing that the judge says is then it's done. It's all done. And he says the court says just a satisfaction of judgment. That's the last document in the file. And then the file will be closed. I.e., there's no more case. And nobody does anything except exchange money. Which happened. Your Honor, we do not believe the settlement covered it. I see I'm well over time, so I'll end here. I understand your position. I understand our concerns. Certainly, Your Honor. We'll try to answer as best we can. Okay. Thank you. Thank you both. And thanks very much to the Irvine Clinic for the work that they've done in this case. Jones v. McDaniel, submitted.
judges: Rosenthal, Berzon, Tallman